**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| VESTA LUSK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-04-1904 |
| | § | |
| | § | |
| GULF COAST COMMUNITY | § | |
| SERVICES ASSOCIATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Vesta Lusk sued Gulf Coast Community Services Association ("Gulf Coast") for

violating the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*., by

denying her a promotion.  (Docket Entry No. 1).  Gulf Coast has moved for summary

judgment and Lusk has filed a response.  (Docket Entry Nos. 13, 17, 18).  After reviewing

the pleadings, the records, the motions and response, and the applicable law, this court grants

Gulf Coast's motion for summary judgment and, by separate order, enters final judgment.

The reasons are explained below.

**I.     Background**

Gulf Coast is a nonprofit organization that manages several government-funded

community services programs, including the Head Start program, in Harris County, Texas.

(Docket Entry No. 13,  App. at 122).  The Executive Director has primary responsibility for

the day-to-day management and administration of Gulf Coast's programs.  (Docket Entry No. 13,  App. at 100–01).  The Executive Director supervises numerous employees and reports directly to the Gulf Coast Board of Directors.  (Docket Entry No. 13, App. at 75, 100–01, 122).

In 1976, Lusk started working at Gulf Coast in the position of Outreach Worker. (Docket Entry No. 13, App. at 12; Docket Entry No. 17, Ex. A at 30).  From 1976 through 2001, Lusk worked her way up through the organization, attaining the position of Managing Director in 2001.  (Docket Entry No. 13, App. at 12–16, 102–05).  The Managing Director reported directly to the Executive Director and shared many of the same job responsibilities. (Docket Entry No. 13, App. at 97–101).  When the Executive Director left Gulf Coast in April 2002, the Board unanimously selected Lusk to serve as the Interim Executive Director. (Docket Entry No. 13,  App. at 84–85; Docket Entry No. 17, Ex. A at 45).  The evidence is conflicting as to how well Lusk performed in that capacity.  Gulf Coast submits summary judgment evidence that Lusk did an unsatisfactory job as Interim Executive Director, including failing to provide the auditors information on a timely basis, failing to meet deadlines, failing to provide information to the Board, failing to correct deficiencies found by the oversight agencies, and evidencing a lack of preparation in Board meetings. (*See* Docket Entry No. 13, App. at 31–32, 70, 75–76, 127–33).  Lusk asserts that other Board members found her performance to be excellent and that the criticism was motivated by age discrimination.  (*See* Docket Entry No. 17, Ex. A at 13–14, Ex. N at 13–14; Docket Entry No. 18, Ex. C at 5–7).

On February 2, 2003, the Board established a committee to conduct a search for a new Executive Director.  (Docket Entry No. 13, App. at 69–74).  The committee included five board members: Randy Bostic, Jaime de la Isla, Dorothy Olmos, Stella Walters, and Gertha Williams.  (Docket Entry No. 17, Ex. B at 17–18).  After de la Isla left the committee, Walters, age 66, served as chair, and Bostic, age 61, as cochair.  (Docket Entry No. 13,  App. at 69, 78; Docket Entry No. 17,  Ex. B at 17–18, Ex. C at 2).  The committee served as a clearinghouse for the Executive Director applications.  (Docket Entry No. 13, App. at 69–74).  In this role, the committee established hiring criteria, screened the applications, and recommended five candidates for interviews by the full Board.  The Board had the final vote on who would be hired.  (Docket Entry No. 13, App. at 69–77).  After meeting and discussing the hiring criteria, the committee established the following job requirements: (1) a master's degree in business administration, public administration, education, or social or behavioral sciences; (2) at least five years' experience with a social services agency; (3) at least five years' experience with an entity which either gave or received federal funding; (4) fundraising skills; (5) knowledge of the nonprofit industry; (6) experience managing multimillion dollar budgets; and (7) extensive computer skills.  (Docket Entry No. 13,  App. at 71–72).  Although the committee accepted applications from current employees, it preferred someone from outside the organization.  (Docket Entry No. 13, App. at 72).  Lusk asserts that the committee used the master's degree requirement to make her ineligible for the position, and that it was a pretext for age discrimination.  Gulf Coast asserts that Lusk was simply not qualified for the position she sought.

The Board posted the position twice, in January and April of 2003.  (*Id.*).  Harris initially placed a newspaper advertisement for the position before the Board met and approved the hiring criteria.  (Docket Entry No. 18, Ex. C at 2–3).  Lusk submitted an application when the position was first posted in January 2003, after the hiring criteria had been approved.  (Docket Entry No. 13,  App. at 72).  When she applied, Lusk was 55 or 56 years old.  (*Id.* at 26).  Jonita Wallace (who later married and changed her name to Jonita Solomon) also submitted an application.  (*Id.* at 72).  Solomon was under 40 years old when she applied for the job.   Solomon's application was dated before the committee formally posted the position.  Solomon was known to be a close acquaintance of Harris.  (Docket Entry No. 18, Ex. C at 1–2).

Lusk's application did not indicate that she had either a master's degree or a professional certification, nor did her resume indicate extensive computer skills.  (Docket Entry No. 13,  App. at 45, 102–05).  Lusk described the previous positions she had held at Gulf Coast in a way that varied from the job titles.  Between 1976 through 1981, although Lusk had held jobs as a "teacher's assistant," "outreach specialist," "information and referral technician," "community organizer," and "senior citizen coordinator," Lusk's resume stated that she had worked as a "board of directors coordinator" during that period.  (Docket Entry No. 13,  App. at 21–22, 104).

The committee selected five individuals for interviews with the Board.  (Docket Entry No. 13,  App. at 72; Docket Entry No. 18, Ex. H at 13).  Lusk was not among the applicants selected for an interview.  (Docket Entry No. 13,  App. at 72).  Committee member Dorothy

Olmos objected to the exclusion of Lusk from the interview pool.  (Docket Entry No. 18, Exs. C at 3–5, H at 15–16).  Olmos felt that the committee, primarily members Harris and Walters, were altering the requirements and rigging the process in favor of Solomon and against Lusk and other qualified candidates.  (Docket Entry No. 18, Ex. C at 3–5).

Before the Board conducted the interviews, however, the committee reposted the position. (Docket Entry No. 13,  App. at 72–73).  The committee reposted the position to address two concerns: first, to clarify that a master's degree was a prerequisite for the job, and second, to ensure the hiring process was sufficiently inclusive of Hispanic candidates, responding to a complaint made by a local community group.  (Docket Entry No. 13, App. at 72–73).  Lusk disputes the first stated explanation for the reposting, asserting that the purported criteria change was a pretext for age discrimination, designed to exclude her from eligibility for the position.  (*See, e.g.*, Docket Entry No. 18, Ex. C at 3–5). After reposting the Executive Director position in April 2003, Gulf Coast started the interview process over and included a notice that candidates who applied in January did not need to resubmit an application.

When the committee began reviewing applications for the position a second time, Bostic allegedly threw Lusk's application in the trash.  (Docket Entry No. 18, Ex. C at 3–4).  According to the affidavit of fellow committee member Olmos, Bostic explained that "we don't want her [Lusk]."  (*Id.* at 4).  Olmos contends that Walters followed up Bostic's comments by saying, "no, [Lusk] doesn't have a master's degree, so we don't want her."

(*Id.*).   According to Olmos, Bostic further stated that Lusk was "too old" for the position. (*Id.* at 11).

The committee submitted four names to the Board for interviews.  The four candidates were Walter Hunt, Jonita Wallace (Solomon), Kenna Bush, and Theresa Ramierez.  (Docket Entry No. 13,  App. at 73).  Each of the four candidates had a master's degree.  On August 16, 2003, the Board interviewed each of the four candidates and voted for the candidate of his or her choice.  The Board split between Solomon and Ramirez; Board Chair Harris did not participate in the initial vote.  When a consensus did not emerge, Harris cast the deciding vote in favor of Solomon, who received the position.  (Docket Entry No. 13, App. at 73–74, 76–77).

Lusk ultimately left Gulf Coast when her position was terminated.  (Docket Entry No. 18, Ex. M at 22, 24).  Lusk then filed this lawsuit based on Gulf Coast's decision not to promote her to the Executive Director position.

## II.    The Applicable Standards under Rule 56 and the ADEA

The usual summary judgment standard applies to this case.  Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue

of material fact." *Celotex Corp. v. Catrett*,  477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case.  *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil and Chemical Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings.  *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000).  The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  *See id.* The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 536 (5th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255.  "Rule 56

'*mandates* the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  A plaintiff alleging age discrimination in violation of the ADEA may prove her claim through either direct or circumstantial evidence, or both. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996).  Direct evidence is evidence that "if believed, proves the fact of intentional discrimination without inference or presumption." *Woodhouse*, 92 F.3d at 252.  If the plaintiff produces direct evidence that discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252–53 (1989).  If the plaintiff "demonstrates that age was a motivating factor in the [employer's decision], it then falls to the [employer] to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus.'" *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).  The evidence

a plaintiff produces must be "sufficient for a jury to conclude, by a preponderance of the evidence, that [age] was a motivating factor for any employment practice." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003) (internal quotations omitted).

If the plaintiff produces only circumstantial evidence of discrimination, the plaintiff may prove age discrimination using the framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  First, the plaintiff must establish a *prima facie* case of discrimination.  *Russell*, 235 F.3d at 222; *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).  The elements of the *prima facie* age discrimination case are: (1) the plaintiff was not hired; (2) she applied for and was qualified for the position at issue; (3) she was within the protected class; and (4) someone outside the protected class obtained the position.  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004).  The presentation of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the plaintiff.  *Bauer*, 169 F.3d at 966.  The defendant must then respond with a legitimate, nondiscriminatory reason for the challenged employment decision.  *Russell*, 235 F.3d at 222; *Bauer*, 169 F.3d at 966.  "This burden on the employer is one only of production, not persuasion, involving no credibility assessments."  *Russell*, 235 F.3d at 219; *see Bauer*, 169 F.3d at 966 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)) ("The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *'if believed by the trier of fact,'* would support a finding that unlawful discrimination was not the cause of the employment action.").  If the defendant meets its burden, the presumption of discrimination created by the *prima facie* case

disappears, and the plaintiff is left with the ultimate burden of proving discrimination. *Hicks*, 509 U.S. at 511–12. The plaintiff may meet its ultimate burden with evidence tending to show that the reason offered by the defendant is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. Evidence demonstrating the falsity of the defendant's explanation, taken together with the *prima facie* case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000). The plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896–97 (5th Cir. 2003); *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 220 (5th Cir. 2001). Where the plaintiff fails to produce substantial evidence of pretext, or produces evidence permitting only an indisputably tenuous inference of pretext, summary judgment in favor of the defendant is appropriate. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003); *Sandstad,* 309 F.3d at 894.

A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." *West*, 330 F.3d at 385; *Reeves*, 530 U.S. at 143. An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. *See Sandstad*, 309 F.3d at 899. Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie* case, is likely to support an inference of discrimination even without further evidence of defendant's true motive. *Id.* at 897; *Russell*,

235 F.3d at 223.  No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation. . . ." *Reeves*, 530 U.S. at 147–48.  The "rare" instances in which a showing of pretext is insufficient to establish discrimination are (1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred. *See Russell*, 235 F.3d at 223 (citing *Reeves*, 530 U.S. at 148); *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000).

## III.    Discussion

Whether this case is analyzed under the "mixed motive" approach or under the burden-shifting approach, summary judgment is appropriate.  The parties do not dispute that Lusk did not receive the position, that Lusk was a member of the protected class,  and that someone outside the protected class – Solomon – received the position.  The evidence shows that Lusk was not qualified for the Executive Director position she sought.  According to Lusk, Harris first posted the Executive Director position in December of 2002.  (Docket Entry No. 18, Ex. C at 2–3).  Lusk claims that the initial job posting did not require a master's degree, which Lusk did not have, and that this requirement was later added as a pretext for age discrimination.  Lusk introduces several different versions of the job postings and advertisements for the job, but they do not support the argument she makes.  Lusk

primarily relies on earlier versions of the job posting, before January 2003.   A typical

example is included in Exhibit E to Lusk's summary judgment brief:

> EDUCATION AND EXPERIENCE: Masters [sic] Degree in Business Administration, Public Administration, Education and Social or Behavior Sciences or business, financial and social services-related professional certification (e.g., CPA, CIA (etc.) [sic]; A minimum of five (5) years experience with social services agencies; A minimum of five (5) years experience with federal grantor or grantee agencies; Sound administrative skills, well-developed management skills; Proven ability to recruit, train and motivate managers and administrators who work together as a team; Experience managing multi-million dollar budgets.

(Docket Entry No. 18, Ex. E at 2).  This language tracks the language used in a *1997* posting

of the Executive Director position, also submitted by Lusk:

> EDUCATION AND EXPERIENCE
>
> Masters [sic] Degree in Business Administration, Public Administration, Education, and Social or Behavioral Sciences; or business, financial, and social services-related professional certification (e.g., CPA, CIA, etc.)
>
> A minimum of five years experience with social services agencies.
>
> A minimum of five years experience with federal grantor or grantee agencies.
>
> Sound administrative skills; well-developed management skills.
>
> Proven ability to recruit, train, and motivate managers and administrators who work together as a team.
>
> Experience managing multi-million dollar budgets.

(Docket Entry No. 18, Ex. J at 3).

Lusk validly argues that, on the face of this job description, a master's degree is not

an absolute job requirement.  She points to the fact that the last posting changed the "or" to

an "and," requiring both a master's degree and professional certification.  Even the earlier

job postings and advertisements, however, made clear that the job required *either* a master's degree "*or* business, financial and social services-related *professional certification (e.g. CPA, CIA (etc.)*,"in addition to the specified types of experience.  (*Id.* (emphasis added)).  The resume Lusk submitted to the committee listed neither a master's degree nor a professional certification of any kind.  In the "Education" section of Lusk's resume, she wrote only, "B.A., social work." (Docket Entry No. 13, Ex. 17 at 3).  Nowhere on Lusk's resume is there any indication of the certification required for the Executive Director position. (*Id.*).

In her original and amended responses to Gulf Coast's motion for summary judgment, Lusk asserts that she did meet the job requirements as they were originally posted, before they were changed to exclude her from consideration.  Lusk asserts that she "possessed business, financial, or social services related professional certification." (Docket Entry No. 17 at 18, Ex. A at 11; Docket Entry No. 18 at 9).  In her deposition, Lusk refers to a "certificate of completion" for certain courses in, or an "associate degree"  from the Department of Human Resources at the University of Houston.  (Docket Entry No. 18, Ex. A at 11).  She does not testify that she had a professional certification in lieu of a master's degree, as required by the job criteria even before the purported "clarification" to the posting occurred.  Lusk's own summary judgment evidence shows that she lacks the minimum requirements for the Executive Director position that had been in place since 1997 (*see* Docket Entry No. 18, Ex. J at 3), long before she alleges the discrimination occurred.  This evidence leads this court to conclude that as a matter of law, she cannot make a *prima facie* showing of age discrimination.

Even if this court did not use the burden-shifting framework, the undisputed evidence in the summary judgment record shows that Gulf Coast meets its burden of showing that it would not have hired her absent the discrimination she alleges.  Lusk proffers the following as direct evidence of discrimination: nonspecific comments from Harris that the committee wanted to hire someone younger for the job (Docket Entry No. 17, Ex. A at 79); Bostic's statement to Lusk that "It's time for new blood, for someone to come in that's younger and prettier and – well, younger, prettier and [with] long hair," (*id.* at 113); Bostic calling Lusk after Solomon received the position and explaining, "Don't feel bad because you didn't get it.  You're getting old, you've been around a long time," (Docket Entry No. 17, Ex. I at 4); and Olmos's recollection from a Board meeting that Bostic stated that Lusk was "too old" for the job, (Docket Entry No. 18, Ex. C at 11).  Assuming, without deciding, that the evidence of the comments about Lusk's age trigger the mixed-motive analytic framework, the undisputed evidence in the summary judgment record shows that Gulf Coast has met its burden of showing that it would have made the same decision regardless of the alleged discrimination.

Members of the committee validly stated that they wanted to look outside the organization for a new Executive Director, but also considered internal applications.  (Docket Entry No. 13, App. at 72).  All candidates granted interviews held master's degrees and the requisite professional certification; Lusk held neither.  (*Compare* Docket Entry No. 13, App. at 102–05 (Lusk's resume) *with id.* at 106–121 (the other candidates' resumes)).  Lusk's strongest evidence – her own deposition and the affidavit by Olmos – fails to create a fact

issue on this point.  Lusk admitted that she did not have the requisite certification, making

her contention that the master's degree requirement was pretextual irrelevant.  Lusk failed

to meet the qualifications as they had existed for years, and as she interpreted them.  "[A]n

employer who offers the relative qualifications of the applicants as its legitimate,

nondiscriminatory reason must show that, at the time it made the decision adverse to the

complaining applicant, it already knew that the ultimately selected individual's qualifications

were superior." *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) (footnote omitted).  Gulf

Coast meets this standard because every candidate selected for an interview before the Board

had objective qualifications – a master's degree and professional certification – superior to

Lusk's.  Even if the master's degree was not a requirement, a professional certification was,

and Lusk lacked that.

Gulf Coast also presents competent summary judgment evidence that it would not

have promoted Lusk to the Executive Director position because of her failure to meet the

performance expectations in the Interim Executive Director Position.  (Docket Entry No. 13,

App. at 31–32, 70, 75–76, 127–33); *cf. Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 345

(5th Cir. 2005) (affirming summary judgment when, assuming the employee had met the

direct evidence requirement, the employee's poor sales performance would have caused the

prima facie case to "vanish[]"); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir.

2005) (holding employer met its burden to demonstrate a legitimate reason for its

employment action "by alleging that [the employee] was terminated due to his inadequate

performance under the new 'cradle-to-grave' business plan, his refusal to adapt and modify

his personal marketing plan in order to implement the cradle-to-grave strategy, and his 'business-as-usual' attitude after the new strategy was implemented.") (footnote omitted). Although Lusk asserts that there were reasons excusing the deficiencies in her performance, she does not dispute that those deficiencies were present.  She has not raised a fact issue as under either the burden-shifting or mixed-motive analytical frameworks.

## IV.  Conclusion

Gulf Coast's motion for summary judgment is granted.  Final judgment is entered by separate order.

SIGNED on September 12, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge